1

2

3

4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PETER GRAVES,

11         Plaintiff,                    No. 2:10-cv-03156 MCE KJN PS

12         v.

13   HILLARY RODHAM CLINTON and
     JAMES STEINBERG,
14
           Defendants.                   FINDINGS AND RECOMMENDATIONS
15   _____/

16         Presently before the court is defendants' motion to dismiss and, in the alternative,

17   motion for summary judgment (Dkt. No. 59).[1]  The court heard this matter on its law and motion

18   calendar on September 29, 2011.  (Minutes, Sept. 29, 2011, Dkt. No. 74.)  Assistant United

19   States Attorney Bobbie J. Montoya appeared on behalf of defendants.  Plaintiff, who is

20   proceeding without counsel and in forma pauperis, appeared at the hearing and represented

21   himself.  The undersigned has considered the appropriately filed briefs, oral arguments, and the

22   appropriate portions of the record in this case and, for the reasons stated below, recommends that

23   defendants' motion to dismiss and motion for partial summary judgment be granted.  The

24   undersigned ultimately recommends that judgment be entered in defendants' favor.

25

26         [1] This case proceeds before the undersigned pursuant to Eastern District of California Local
     Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

1

1    I.     BACKGROUND

2           A.     Plaintiff's First Amended Complaint

3                  Plaintiff's First Amended Complaint (Dkt. No. 57) is the operative complaint and

4    remains, in certain respects, difficult to decipher.  Plaintiff's First Amended Complaint attaches

5    approximately 170 pages of exhibits, and many of these 20 exhibits consist of narrative

6    documents or compilations prepared by plaintiff.

7                  Plaintiff alleges that he is a disabled person of Middle Eastern heritage, who also

8    has a Muslim background.  He alleges that he applied with the U.S. Department of State ("State

9    Department" or "Department of State") to become employed as a "Foreign Affairs Officer," and

10   took an examination in connection with that application.  (First Am. Compl. at 2.)  Plaintiff

11   alleges that he was discriminated against in the application process because of his "ethnic

12   background, religion, national origin, and disability."  (Id. at 2.)  Briefly stated, plaintiff alleges

13   that he would have scored within the "top three positions" out of all of the applicants who

14   participated in the self-assessment examination process had he been given "disability points" in

15   addition to his score on the self-assessment portion of the examination.  (See id. at 2-3.)  Plaintiff

16   contends that the State Department's failure to accord his score a "five percent increase" based

17   on his disability, which would purportedly would have made plaintiff eligible for the position he

18   sought, violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112; the Due

19   Process Clause of the Fourteenth Amendment to the U.S. Constitution; and Title VII of the Civil

20   Rights Act of 1964, 42 U.S.C. § 2000e-2.  (See id. at 3-5.)  He also alleges that the failure to

21   provide disability points was "grossly negligent (tort)."  (Id. at 4.)

22                  Plaintiff's First Amended Complaint repeatedly intimates that some measure of

23   disability-based discrimination occurred because military veterans were awarded additional

24   points for their service.  (See First Am. Compl. at 7.)  He alleges that the State Department's

25   preferential award of additional points to veterans was a pretext for discrimination against

26   disabled applicants.  (See id. ("In other words hiring 'veterans' is the excuse for the defendants

2

1  [*sic*] discrimination.").)

2       Plaintiff also alleges that the State Department's examination process

3  discriminates on the basis of ethnicity and religious association.  (First Am. Compl. at 5-6.)

4  Plaintiff alleges that he was discriminated against "because he was forced to provide his original

5  name on the application" (id. at 6); plaintiff's "original" name is "Rasoul Rahimi."

6       Finally, plaintiff alleges that the State Department violated his First Amendment

7  rights, 42 U.S.C. § 1985, the ADA, and "Article III" by impeding his rights to discovery of

8  "'workforce diversity' numbers."  (See First Am. Compl. at 2, 7-8.)  Plaintiff's claim appears to

9  relate both to proceedings before the Equal Employment Opportunity Commission ("EEOC")

10 and this court.  (See id. at 2 (alleging that "Defendant took his 1st Amendment rights from his in

11 [*sic*] course of discovery at EEOC and continued to take away his 1st Amendment rights by

12 blocking his summon to court").)

13     B.    Procedural History

14       Plaintiff filed his complaint on November 22, 2010, and defendants subsequently

15 filed a motion to dismiss or for more definite statement (Dkt. Nos. 1, 38).[2]  On June 20, 2011, the

16 court granted defendants' motions and ordered plaintiff to file a First Amended Complaint.

17

18     [2]  Plaintiff can be fairly characterized as a frequent filer of lawsuits in this court.  Between
    November 4, 2010, and August 1, 2011, plaintiff filed 19 actions in this court: Graves v. Holder, No.
19  2:10-cv-02970 WBS EFB PS (E.D. Cal.) (closed); Graves v. Berrien, No. 2:10-cv-03015 MCE EFB
    PS (E.D. Cal.) (closed); Graves v. Clinton, No. 2:10-cv-03106 JAM DAD PS (E.D. Cal.) (closed);
20  Graves v. Clinton, No. 2:10-cv-03128 JAM KJN PS (E.D. Cal.) (closed); Graves v. Clinton, No.
    2:10-cv-03156 MCE KJN PS (E.D. Cal.); Graves v. Donahoe, No. 2:11-cv-00329 MCE EFB PS
21  (E.D. Cal.) (closed); Graves v. Visek, No. 2:11-cv-00367 JAM GGH PS (E.D. Cal.) (closed); Graves
    v. Sebelius, No. 2:11-cv-00453 MCE EFB PS (E.D. Cal.) (closed); Graves v. Dep't of Health &
22  Human Servs., No. 2:11-cv-01077 JAM GGH PS (E.D. Cal.) (closed); Graves v. Sutter Bd. of
    Directors, No. 2:11-cv-01078 JAM CMK PS (TEMP) (E.D. Cal.) (closed); Graves v. Sutter Bd. of
23  Directors, No. 2:11-cv-01119 KJM KJN PS (E.D. Cal.); Graves v. U.S. Dep't of Health & Human
    Servs., No. 2:11-cv-01120 KJM KJN PS (E.D. Cal.); Graves v. UC Davis, No. 2:11-cv-01164 KJM
24  KJN PS (E.D. Cal.); Graves v. Mendez, 2:11-cv-01316 KJM EFB PS (E.D. Cal.) (closed); Graves
    v. Johnson, No. 2:11-cv-01851 GEB GGH PS (E.D. Cal.) (closed); Graves v. Experien, No. 2:11-cv-
25  01943 GEB JFM PS (E.D. Cal.) (closed); Graves v. Experien, No. 2:11-cv-01977 GEB JFM PS
    (E.D. Cal.) (closed); Graves v. Experien, No. 2:11-cv-01988 GEB JFM PS (E.D. Cal.) (closed); and
26  Graves v. The Big 3 Credit Agencies, No. 2:11-cv-02024 MCE GGH PS (E.D. Cal.) (closed).

1   (Order, June 20, 2011, Dkt. No. 55.)  Plaintiff filed his First Amended Complaint on July 13,

2   2011, and defendant filed the pending motion shortly thereafter.

3            On August 25, 2011, and prior to the time that plaintiff was required to file a

4   written opposition to the pending motion, the undersigned held an already-scheduled status

5   conference in order to discuss the implications of defendants' potentially dispositive motion to

6   dismiss and motion for summary judgment, as well as the requirements placed on plaintiff in

7   responding to the motion.[3]  (Minutes, Aug. 25, 2010, Dkt. No. 65; Order, Aug. 29, 2011, at 1-2

8   ("Despite the filing of a potentially dispositive motion by defendants, the undersigned left the

9   status conference on calendar largely for plaintiff's benefit; the undersigned intended to provide

10  plaintiff with guidance regarding the need for plaintiff to follow the court's local rules and the

11  Federal Rules of Civil Procedure in opposing defendants' motion."), Dkt. No. 67.)  The

12  undersigned had also intended to address whether plaintiff desired to conduct any discovery in

13  the case prior to resolution of the portion of the motion that sought partial summary judgment.

14  (See id. at 3-4.)  However, plaintiff failed to appear at the conference, which was consistent with

15  plaintiff's long history of failing to follow the court's orders and Local Rules, and the Federal

16  Rules of Civil Procedure.[4]  (See id. at 4-5.)  Although the undersigned could have recommended

17  the dismissal of plaintiff's entire case pursuant to Federal Rule of Civil Procedure 41(b), the

18  undersigned declined to do so.  And because plaintiff had indicated to defendants' counsel an

19  intention to file hundreds of pages of briefing in multiple parts in response to defendants' motion,

20  _____

21  [3] Of note, defendants provided plaintiff with a separate "warning" regarding the implications
    of a summary judgment motion and what is required to oppose such a motion.  (Dkt. No. 59, Doc.
22  No. 59-5.)  Although this notice must be given to a pro se prisoner in connection with a motion for
    summary judgment, see Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), it need not
23  be given to a pro se party who is not a prisoner, see Jacobsen v. Filler, 790 F.2d 1362, 1364-65 (9th
    Cir. 1986).  In any event, plaintiff was duly advised of his obligations in opposing a motion for
24  summary judgment imposed by Federal Rule of Civil Procedure 56 and Eastern District Local
    Rule 260.

25  [4] Plaintiff's unexcused failure to appear at the status conference violated this court's Local
    Rule 240(a), which provides, in part, that "[a]ll parties receiving notice of any status conference shall
26  appear in person or by attorney."

4

1   the undersigned imposed briefing requirements on plaintiff that, among other things, limited

2   plaintiff to filing a single opposition brief, written in 12-point font, not to exceed 25 pages

3   excluding exhibits.[5]  (See id. at 2-4.)  The court also advised plaintiff that he could file a motion

4   to be permitted to conduct discovery pursuant to Federal Rule of Civil Procedure 56(d).  (Id. at 3-

5   4.)  Plaintiff filed a motion for reconsideration of the order entered by the undersigned on August

6   29, 2010 (Dkt. No. 68), which was denied by the district judge assigned to this case (Order, Sept.

7   8, 2011, Dkt. No. 70).

8           Plaintiff filed a 25-page opposition brief typed in approximately 10-point font,

9   which did not include an express Rule 56(d) motion for discovery (Dkt. No. 69).[6]  Plaintiff did

10  not file a statement of disputed facts consistent with Local Rule 260, but attempted to dispute

11  some of defendants' proposed undisputed facts relying on the allegations in, and attachments to,

12  the First Amended Complaint.  (See Opp'n at 14-19.)  Plaintiff submitted no declarations or

13  evidence in opposition to the motion for partial summary judgment.

14          On September 26, 2011, and despite the undersigned's clear warning to plaintiff

15  regarding the filing of only one opposition brief, plaintiff filed a document entitled "Response to

16

17       [5]  At the status conference, defendants' counsel represented that plaintiff had already
18  transmitted part of his opposition to the pending motions, which consisted of 139 pages of material
    and allegedly constituted part one of six total parts.  (See Order, Aug. 29, 2011, at 4.)

19       [6]  At the hearing, the undersigned inquired with plaintiff about the reason he did not file a
    Rule 56(d) motion as suggested by the court.  Plaintiff suggested that he had indicated in his
20  opposition that he still wanted to conduct discovery in this case, and referred the court to "item 39"
    on page 25 of his opposition, which states: "Discovery is far from complete where numbers and
21  ranks of grade 12 candidates in full has [sic] not been disclosed in additional [sic] to critical cultural
    data."  This statement is by no means a motion to conduct additional discovery pursuant to
22  Rule 56(d).  Nevertheless, the undersigned permitted plaintiff to state on the record at the hearing
    what precise discovery he wished to conduct.  Plaintiff responded only that he wanted to obtain
23  statistical data regarding how many disabled persons and persons of "Islamic background" have been
    hired by the State Department as Foreign Affairs Officers in order to determine whether the State
24  Department is complying with civil rights laws.  Plaintiff suggested that this data would confirm
    whether his rights were violated or whether, as plaintiff stated, his was the "lemon" case.  The
25  undersigned concludes that even if plaintiff were permitted to conduct such discovery, the resulting
    data would not materially alter the analysis of the claims for which defendants seek summary
26  judgment.

1  Summary Judgment," which constituted either plaintiff's second written opposition to

2  defendants' motions or a sur-reply (Dkt. No. 72).  Consistent with the order entered August 29,

3  2011, the undersigned summarily disregarded and declined to consider plaintiff's "Response to

4  Summary Judgment," which was filed only three days prior to the hearing.  (Order, Sept. 27,

5  2011, Dkt. No. 73.)  And although the undersigned could have recommended the dismissal of

6  plaintiff's entire case pursuant to Federal Rule of Civil Procedure 41(b), the undersigned again

7  declined to make such a recommendation.[7]  (Id. at 1-2.)

8       C.    The Undisputed Facts

9            Defendants submitted 16 numbered undisputed facts, which are reprinted below.

10 Plaintiff does not dispute the facts numbered 1, 2, 9-13, 15, and 16.  As to the remaining facts,

11 plaintiff does not actually dispute the fact framed by defendants.  Instead, plaintiff offers

12 argument, legal conclusions, speculation, and conjecture that are not responsive to the facts

13 proposed by defendants.  (See Pl.'s Opp'n at 14-19.)  Defendants' undisputed facts follow:

> 1.  Plaintiff applied with the Department of State for two Foreign Affairs
> Officer positions, a GS-11 and a GS-12. Declaration of Janice M. Mason
> (hereinafter "Mason Decl."), filed in conjunction with the instant motion,
> at ¶ 6.
>
> 2.  A total of 511 applicants applied for the GS-11 position, and 242
> applied for the GS-12 position.  Mason Decl. at ¶ 6.
>
> 3.  Plaintiff scored 87.63 for the GS-11 position, and 93.48 for the GS-12

---

[7] The undersigned's order states, in part:

> Plaintiff has demonstrated a consistent inability to follow the court's
> orders and Local Rules and the Federal Rules of Civil Procedure, and
> plaintiff's recent filing is simply one more example of plaintiff's complete
> and blatant disregard for the court's orders and the applicable rules of
> procedure.  Although the undersigned previously warned plaintiff that his
> failure to comply with the court's orders, the court's Local Rules, or the
> Federal Rules of Civil Procedure would result in a recommendation that his
> case be dismissed with prejudice pursuant to Federal Rule of Civil Procedure
> 41(b), the undersigned will nonetheless consider defendants' motions on the
> merits and hear those motions on September 29, 2011.

(Order, Sept. 27, 2011, at 1-2 (footnote omitted).)

6

1    position.  Mason Decl. at ¶ 9.

2        4.  Scores were based on the applicants' answers to self-assessment
     questions on the application, along with any additional points for veteran's
3    preference eligibility.  Mason Decl. at ¶ 5.

4        5.  There were 110 applicants who scored higher than plaintiff for the
     GS-11 position, and 26 applicants who scored higher for the GS-12
5    position.  Mason Decl. at ¶ 7.

6        6.  Five applicants were listed on the selection certificate for each position
     and referred to the selecting official for further consideration.  Mason
7    Decl. at ¶ 7; see also Mason Decl. Exhibit 3.

8        7.  Plaintiff was not listed on either the GS-11 or GS-12 certificate.
     Mason Decl. at ¶ 9; see also Mason Decl. Exhibit 3.
9
         8.  No applicants were listed on the certificates that received scores lower
10   than plaintiff.  Mason Decl. at ¶ 9.

11       9.  Plaintiff was notified by emails on or about May 4, 2009, that he had
     not been selected for the Foreign Affairs Officer positions. Mason Decl. at
12   ¶ 10; see also Mason Decl. Exhibit 6.

13       10.  On or about May 5, 2009, plaintiff contacted an EEO counselor
     alleging that his nonselection was discriminatory.  See FAC Exhibit 5 at 2.
14
         11.  Plaintiff filed a formal EEO complaint on or about June 18, 2009.  See
15   FAC Exhibit 5 at 2.

16       12.  On September 30, 2010, an EEOC Administrative Judge issued a
     decision adverse to plaintiff.  See FAC Exhibit 5 at 5.
17
         13.  On November 22, 2010, plaintiff filed the instant action. Doc. #1.
18
         14.  On June 20, 2011, the Court granted the defendants' motion for a
19   more definite statement. Doc. #55.

20       15.  On July 13, 2011, plaintiff filed his FAC alleging violations of the
     ADA, Title VII, the U.S. Constitution (Article III and the 1st and 14th
21   Amendments), 42 U.S.C. § 1985, and gross negligence. Doc. #57.

22       16.  Named as defendants in the FAC are Secretary of State Hillary
     Random [sic] Clinton and Deputy Secretary of State James Steinberg.
23   FAC at 1; see also FAC Exhibit 19 (James Steinberg Role Within the State
     Department).
24

25   (Defs.' Memo. of P. & A. In Supp. of Mot. to Dismiss and Mot. for Summ. J. ("Defs.' Memo.")

26   at 1-3, Dkt. No. 59, Doc. No. 59-1.)

1   II.   LEGAL STANDARDS

2       A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

3           Defendant's motion seeks dismissal of plaintiff's complaint, in part, for lack of

4   subject matter jurisdiction on the ground that plaintiff has not established that the United States

5   waived its sovereign immunity.  To confer subject matter jurisdiction in an action against a

6   sovereign, there must exist: (1) "statutory authority vesting a district court with subject matter

7   jurisdiction," and (2) "a waiver of sovereign immunity."  Alvarado v. Table Mountain Rancheria,

8   509 F.3d 1008, 1016 (9th Cir. 2007).  Because the United States is a sovereign, it is immune

9   from suit unless it has expressly waived its immunity and consented to be sued.  See Dunn &

10  Black, P.S. v. United States, 492 F.3d 1084, 1087-88 (9th Cir. 2007).  The United States

11  Supreme Court has "frequently held . . . that a waiver of sovereign immunity is to be strictly

12  construed, in terms of scope, in favor of the sovereign."  Dep't of the Army v. Blue Fox, Inc.,

13  525 U.S. 255, 261 (1999).  Moreover, the waiver cannot be implied, but must be "unequivocally

14  expressed" in the statutory text.  Id.; accord Harger v. Dep't of Labor, 569 F.3d 898, 903 (9th Cir.

15  2009).  The party asserting a waiver of sovereign immunity bears "the burden of establishing that

16  its action falls within an unequivocally expressed waiver of sovereign immunity by

17  Congress. . . ."  Dunn & Black, P.S., 492 F.3d at 1088.

18          When considering a motion to dismiss for lack of subject matter jurisdiction

19  pursuant to Federal Rule of Civil Procedure 12(b)(1) or 12(h)(3), the district court is not

20  restricted to the face of the pleadings and "may review any evidence, such as affidavits and

21  testimony, to resolve factual disputes concerning the existence of jurisdiction."  McCarthy v.

22  United States, 850 F.2d 558, 560 (9th Cir. 1988) (collecting cases); see also Warren v. Fox

23  Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) ("A jurisdictional challenge under

24  Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic

25  evidence.").

26  ////

8

B.     Motion to Dismiss for Failure to State A Claim On Which Relief Can Be Granted

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "A complaint may survive a motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its face.'"  Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949).  The court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff.  Corrie v. Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  Paulsen, 559 F.3d at 1071 (citations and quotation marks omitted).

The court must construe a pro se pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed, particularly where civil rights claims are involved").

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may

9

1   generally consider only allegations contained in the pleadings, exhibits attached to the complaint,

2   and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of

3   Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although

4   the court may not consider a memorandum in opposition to a defendant's motion to dismiss to

5   determine the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections,

6   151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers

7   in deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2

8   (9th Cir. 2003).

9          C.     Motion for Summary Judgment or Partial Summary Judgment

10                Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for

11   summary judgment, identifying each claim or defense--or the part of each claim or defense--on

12   which summary judgment is sought."  It further provides that "[t]he court shall grant summary

13   judgment if the movant shows that there is no genuine dispute as to any material fact and the

14   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[8]  A shifting burden of

15   proof governs motions for summary judgment under Rule 56.  Nursing Home Pension Fund,

16   Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010).

17   Under summary judgment practice, the moving party

18                always bears the initial responsibility of informing the district court
                  of the basis for its motion, and identifying those portions of "the
19                pleadings, depositions, answers to interrogatories, and admissions
                  on file, together with the affidavits, if any," which it believes
20                demonstrate the absence of a genuine issue of material fact.

21   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

22   "Where the non-moving party bears the burden of proof at trial, the moving party need only

23   prove that there is an absence of evidence to support the non-moving party's case."  In re Oracle

24   _____

25        [8]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10,
     2010.  However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56,
26   "[t]he standard for granting summary judgment remains unchanged."

1   Corp. Sec. Litig., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ.

2   P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not

3   have the trial burden of production may rely on a showing that a party who does have the trial

4   burden cannot produce admissible evidence to carry its burden as to the fact").

5           If the moving party meets its initial responsibility, the opposing party must

6   establish that a genuine dispute as to any material fact actually does exist.  See Matsushita Elec.

7   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986).  To overcome summary

8   judgment, the opposing party must demonstrate the existence of a factual dispute that is both

9   material, i.e., it affects the outcome of the claim under the governing law, see Anderson v.

10   Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores

11   Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010), and genuine, i.e., "'the evidence is such

12   that a reasonable jury could return a verdict for the nonmoving party,'" FreecycleSunnyvale v.

13   Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at 248).  A

14   party opposing summary judgment must support the assertion that a genuine dispute of material

15   fact exists by: "(A) citing to particular parts of materials in the record, including depositions,

16   documents, electronically stored information, affidavits or declarations, stipulations . . . ,

17   admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do

18   not establish the absence or presence of a genuine dispute, or that an adverse party cannot

19   produce admissible evidence to support the fact."[9]  Fed. R. Civ. P. 56(c)(1)(A)-(B).  However,

20   the opposing party "must show more than the mere existence of a scintilla of evidence."  In re

21   Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

22           In resolving a motion for summary judgment, the evidence of the opposing party

23   is to be believed.  See Anderson, 477 U.S. at 255.  Moreover, all reasonable inferences that may

24

25       [9]  "The court need consider only the cited materials, but may consider other materials in the
     record."  Fed. R. Civ. P. 56(c)(3).  Moreover, "[a] party may object that the material cited to support
     or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ.

26   P. 56(c)(2).

1  be drawn from the facts placed before the court must be viewed in a light most favorable to the

2  opposing party.  See Matsushita, 475 U.S. at 587; In re Oracle Corp. Sec. Litig., 627 F.3d at 387.

3  However, to demonstrate a genuine factual dispute, the opposing party "must do more than

4  simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record

5  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

6  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

7  III.    MOTION TO DISMISS

8        A.    Plaintiff's Claim or Claims Brought Pursuant to the ADA

9            Plaintiff's First Amended Complaint alleges that defendants discriminated against

10  him in violation of the ADA.  (See First Am. Compl. at 2-4.)  Plaintiff's opposition to the

11  pending motions clarifies that plaintiff's ADA claim is premised on Title I of the ADA (Opp'n

12  at 23), which relates to employment.[10]  Defendants contend that Title I of the ADA does not

13  apply to the federal government and that, accordingly, plaintiff's claim or claims that defendants

14  violated the ADA should be dismissed with prejudice.  (Defs.' Memo. at 6; Defs.' Reply Br. at 3-

15  4, Dkt. No. 71.)  However, defendants acknowledge that the Rehabilitation Act of 1973, 29

16  U.S.C. §§ 791 et seq. ("Rehabilitation Act"), may provide an avenue for relief for a plaintiff

17  alleging disability discrimination by the federal government.  (See Defs.' Memo. at 6.)

18            Plaintiff's ADA-related claims are premised on 42 U.S.C. § 12112 (see First Am.

19  Compl. at 2), which in relevant part provides: "No covered entity shall discriminate against a

20  qualified individual on the basis of disability in regard to job application procedures, the hiring,

21  advancement, or discharge of employees, employee compensation, job training, and other terms,

22  conditions, and privileges of employment."  42 U.S.C. § 12112(a).  However, Title I of the ADA

23

24        [10]   Zimmerman v. Ore. Dep't of Justice, 170 F.3d 1169, 1172 (9th Cir. 1999) (noting that
      Title I of the ADA specifically applies to employment); see also Walsh v. Nov. Dep't of Human
25  Resources, 471 F.3d 1033, 1036 (9th Cir. 2006) ("Title I of the ADA enables individuals who have
      suffered employment discrimination because of their disabilities to sue employers for damages and
26  injunctive relief in federal court.").

1    does not govern alleged discriminatory acts of the federal government.  Relevant here, the term

2    "covered entity" includes an "employer."[11]  Id. § 12111(2).  In defining the term "employer,"

3    Congress expressly excluded the federal government: "The term 'employer' does not include--

4    . . . (i) the United States, a corporation wholly owned by the government of the United States, or

5    an Indian tribe."  Id. § 12111(5)(B).  In persuasive dictum in a decision ultimately addressing the

6    applicability of Title II of the ADA to the federal government, the Ninth Circuit Court of Appeals

7    stated the same conclusion regarding Title I's inapplicability to the federal government:

8    > Although Congress generally included governmental employers in
> Title I, it exempted the *federal* government from that Title.  See 42 U.S.C.
9    > § 12111(5)(B) ("The term 'employer' does not include . . . the United
> States, a corporation wholly owned by the government of the United
10   > States, or an Indian tribe. . . .").  That being so, by including governmental
> employers in Title I, but at the same time excluding federal governmental
11   > employers, Congress was referring *only* to state and local governmental
> employers such as defendant.

12

13   Zimmerman, 170 F.3d at 1172; accord Henrickson v. Potter, 327 F.3d 444, 447 (5th Cir. 2003)

14   (explaining that "the entire federal government is excluded from the coverage of the ADA"), cert.

15   denied 540 U.S. 1018 (2003); Hiler v. Brown, 177 F.3d 542, 544 n.4 (6th Cir. 1999) (affirming

16   the district court's dismissal of the plaintiff's claim alleging violations of Title I of the ADA

17   against the federal government).[12]

18            Plaintiff's First Amended Complaint alleges violations of Title I of the ADA

19

20       [11]  The term "covered entity" is also defined as an "employment agency, labor organization, or joint labor-management committee."  42 U.S.C. § 12111(2).  These additional definitions are not material here.

21

22       [12]  Unpublished decisions of this court are in accord.  See, e.g., Johnson v. Potter, No. CV F 09-0529 LJO DLB, 2011 WL 2360360, at *5 (E.D. Cal. June 9, 2011) (unpublished) (dismissing the plaintiff's ADA claim alleged against the United States Postal Service); Arias v. McHugh, No.

23   CIV. 2:09-690 WBS GGH, 2010 WL 2511175, at *12 (E.D. Cal. June 17, 2010) (unpublished) ("The federal government may not be sued under the Americans with Disabilities Act . . . , because it is

24   specifically excluded from the ADA's definition of 'employer.'") (citations omitted); Taylor v. Donley, No. CIV S-08-0869 JAM DAD PS, 2010 WL 958067, at *6 (E.D. Cal. Mar. 10, 2010)

25   (unpublished) (stating that "by statutory definition, the ADA does not apply to claims alleged by federal employees against their employers"), adopted by 2010 WL 1236327 (E.D. Cal. Mar. 26,

26   2010).

1   premised on acts of the federal government.  Because the federal government is expressly

2   excluded from coverage under Title I of the ADA, plaintiff's ADA claims should be dismissed

3   with prejudice.  However, as defendants correctly note, plaintiff may potentially be able to allege

4   a claim of disability-based discrimination against the federal government pursuant to Section 501

5   of the Rehabilitation Act.  Defendants have moved for summary judgment in regards to such a

6   claim, and the parties' arguments in that regard are addressed below.

7            B.      Plaintiff's Constitutional Claims and Negligence Claim

8            As noted above, plaintiff alleges that defendants violated the First and Fourteenth

9   Amendments to the United States Constitution.  (See First Am. Compl. at 2-4, 7.)  Relatedly, he

10  alleges a violation of 42 U.S.C. § 1985.  (Id. at 8.)  Plaintiff also alleges a tort claim of "gross

11  negligence."  (Id. at 4.)  Defendants move to dismiss plaintiff's tort claim and claims premised on

12  the Constitution and federal statutes (other than Title VII and the Rehabilitation Act) on the

13  grounds that Title VII and the Rehabilitation Act provide plaintiff's exclusive remedies for the

14  alleged discrimination.  (Defs.' Memo. at 6-9.)

15           Defendants are correct that, generally, Title VII is the exclusive remedy for

16  discrimination in federal employment.[13]  See Brown v. Gen. Servs. Admin., 425 U.S. 820, 829-

17  30 (1976) (holding that Title VII, and specifically 42 U.S.C. § 2000e-16, provides an exclusive,

18  preemptive administrative and judicial scheme for the redress of federal employment

19  discrimination); accord White, 652 F.2d at 916-17 (holding that 42 U.S.C. § 2000e-16 provided

20  the exclusive remedy to a federal employee asserting job-related racial discrimination, and

21  affirming the dismissal of claims premised on 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988,

22  2000d, and the U.S. Constitution).  Defendants are also correct that the Rehabilitation Act, which

23  incorporates the rights, remedies, and procedures of 42 U.S.C. § 2000e-16 in regards to claims of

24  _____

25           [13]  However, "Title VII does not preclude separate remedies for unconstitutional action other
    than discrimination based on race, sex, religion or national origin."  White v. Gen. Servs. Admin.,
26  652 F.2d 913, 917 (9th Cir. 1981).

                                                14

discrimination on the basis of a disability, see 29 U.S.C. § 794a(a)(1), generally provides the exclusive remedy for disability-based discrimination in federal employment.  See Johnston v. Horne, 875 F.2d 1415, 1420 (9th Cir. 1989) (holding that Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, provides the exclusive remedy for a claim of disability discrimination by a federal employee), overruled on other grounds, Irwin v. Dep't of Veterans Affairs, 498 U.S. 89 (1990); accord Newland v. Dalton, 81 F.3d 904, 906 n.1 (9th Cir. 1996); Boyd v. U.S. Postal Serv., 752 F.2d 410, 413 (9th Cir. 1989); Wilborn v. Ashcroft, 222 F. Supp. 2d 1192, 1206 (S.D. Cal. 2002), aff'd, 70 Fed. Appx. 469 (9th Cir. 2003).[14]  Because there are certain narrow exceptions to the exclusivity of Title VII and the Rehabilitation Act, the undersigned addresses plaintiff's claims in greater detail below.

1.   Plaintiff's Purported Bivens Claims

Defendants move to dismiss plaintiff's direct constitutional challenges premised on the First and Fourteenth Amendments, 42 U.S.C. §§ 1983 and 1985, and vague reference to "Article III."[15]  (Defs.' Memo. at 8; see Reply Br. at 4-5.)  Defendants argue that plaintiff may not pursue a direct constitutional challenge as provided for in Bivens v. Six Unknown Named

---

[14]   Unpublished decisions of district courts within the Ninth Circuit are in accord.  See, e.g., Smith v. Clinton, Civ. No. 10-00587 LEK-BMK, 2011 WL 3290522, at *11 (D. Haw. July 31, 2011) (unpublished) ("The Rehabilitation Act provides the exclusive remedy for federal employees claiming discrimination based on a disability."); Mahoney v. Donahoe, No. C 11-00177 MEJ, 2011 WL 2976794, at *4 (N.D. Cal. July 22, 2011) (unpublished) (same); Mandujano v. Geithner, No. C 10-01226 LB, 2011 WL 2550621, at *3 (N.D. Cal. June 27, 2011) (unpublished) (same); Munoz v. Soc. Sec. Admin., No. 10cv1003-MMA (NLS), 2011 WL 1085644, at *4 (S.D. Cal. Mar. 23, 2011) (unpublished) (same).

[15]   To the extent not preempted by Title VII and the Rehabilitation Act, plaintiff's claims premised on the Fourteenth Amendment to the U.S. Constitution fail.  In short, the Fourteenth Amendment applies to actions by a state, not actions of the federal government.  See U.S. Const., amend. XIV, § 1 ("No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.") (emphasis added); San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 542 n.21 (1987) ("The Fourteenth Amendment applies to actions by a State."); Castillo v. McFadden, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States . . . .").

1   Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), because Title VII and the

2   Rehabilitation Act provide the exclusive avenues for relief as to plaintiff's claims of

3   discrimination in applying for federal employment.

4               "In Bivens, the Supreme Court held that the victim of a Fourth Amendment

5   violation committed by federal officers acting under color of their authority could bring an action

6   under federal law for money damages against the officers."  Moore v. Glickman, 113 F.3d 988,

7   990-91 (9th Cir. 1997); see also Carlson v. Green, 446 U.S. 14, 18 (1980).  In Moore v.

8   Glickman, the Ninth Circuit Court of Appeals discussed a limitation on Bivens claims where

9   Congress has otherwise provided a statutory remedial system to address the claim at issue:

10              An express limitation on the creation of a Bivens claim can be found when
                Congress has provided an alternative remedy which it explicitly declares to
11              be a substitute for recovery directly under the Constitution and views as
                equally effective.  Implied preclusion of a Bivens action can be found
12              when defendants can demonstrate the existence of "special factors
                counselling hesitation in the absence of affirmative action by Congress."
13              The presence of a deliberately crafted statutory remedial system is one
                "special factor" that precludes a Bivens remedy.
14

15  Moore, 113 F.3d at 991 (citations omitted); accord Libas Ltd. v. Carillo, 329 F.3d 1128, 1130

16  (9th Cir. 2003).

17              Under the circumstances of this case, Title VII and the Rehabilitation Act, which

18  permit a plaintiff to pursue claims of discrimination in applying for federal employment, see 42

19  U.S.C. § 2000e-16; 29 U.S.C. § 794a(a)(1), constitute deliberately crafted statutory remedial

20  systems designed to address discrimination in federal employment that preclude a Bivens

21  remedy.  See, e.g., Brazil v. U.S. Dep't of the Navy, 66 F.3d 193, 197-98 (9th Cir. 1995)

22  (affirming dismissal of Bivens remedy where, in part, Title VII provided an exclusive judicial

23  remedy to a civilian who alleged discrimination in federal employment), cert. denied, 517 U.S.

24  1103 (1996); White, 652 F.2d at 917 (holding that where the plaintiff's retaliation claim was

25  within the scope of Title VII and the plaintiff alleged no separate constitutional claim for which

26  there was no statutory remedy, no independent Bivens claim could proceed); Santos v. Potter,

16

1   No. C-06-2948-VRW, 2007 WL 926493, at *2 (N.D. Cal. Mar. 26, 2007) (unpublished)

2   (concluding that "because plaintiff's <u>Bivens</u> claim is based on defendant's allegedly

3   discriminatory termination of plaintiff, Title VII and the ADEA constitute plaintiff's exclusive

4   remedies").

5         Even if plaintiff's constitutional claims fall outside the scope of Title VII or the

6   Rehabilitation Act, they should be dismissed to the extent they are alleged against defendants in

7   their official capacities because sovereign immunity bars such claims.  Lawsuits seeking money

8   damages against federal government employees in their official capacities are considered

9   lawsuits against the United States, and the United States has not waived its sovereign immunity

10  for such damages claims.  <u>See Rivera v. United States</u>, 924 F.2d 948, 951 (9th Cir. 1991) ("The

11  courts lack subject matter jurisdiction to hear constitutional damage claims against the United

12  States, because the United States has not waived sovereign immunity with respect to such

13  claims."); <u>Gilbert v. DaGrossa</u>, 756 F.2d 1455, 1458 (9th Cir. 1985) ("It has long been the rule

14  that the bar of sovereign immunity cannot be avoided by naming officers and employees of the

15  United States as defendants.  Thus, a suit against IRS employees in their official capacity is

16  essentially a suit against the United States.") (citations omitted).  Plaintiff has not met his burden

17  to identify an unequivocal waiver of sovereign immunity in this regard.

18         2.    <u>Plaintiff's Claim of "Gross Negligence"</u>

19         In regards to plaintiff's allegation of "gross-negligence," defendants argue that

20  Title VII and the Rehabilitation Act provide the exclusive remedies for such a tort claim because

21  plaintiff alleges the same facts to support his Title VII discrimination claim and his negligence

22  claim.  (Defs.' Memo. at 9; Reply Br. at 4-5.)  In essence, defendants contend that Title VII

23  preempts the state tort claim under the facts pled by plaintiff.

24         As a general matter, Title VII, and particularly 42 U.S.C. § 2000e-16, "provides

25  the exclusive, preemptive remedy for federal employees seeking to redress employment

26  discrimination."  <u>Sommatino v. United States</u>, 255 F.3d 704, 711 (9th Cir. 2001) (citing <u>Brown</u>,

1    425 U.S. at 829-32).  However, the Ninth Circuit Court of Appeals has held that Title VII does

2    not preempt a Federal Tort Claims Act claim or state law tort claim "if the conduct alleged is a

3    highly personal violation beyond the meaning of workplace discrimination."  See id.

4            Here, plaintiff's "gross-negligence" claim is premised on the allegation that the

5    Department of State "does not offer 'disability points' on the exam," which resulted in plaintiff

6    scoring lower on the examination than other candidates for the position of Foreign Affairs

7    Officer.[16]  (First Am. Compl. at 4.)  At a minimum, plaintiff's allegations simply do not meet the

8    level of egregiousness required to support an independent tort claim.  In short, plaintiff has not

9    alleged "a highly personal violation beyond the meaning of workplace discrimination"; indeed,

10   plaintiff complains only of discrimination in connection with his application for employment

11   with the State Department.[17]  The Ninth Circuit Court of Appeals has described the types of

12   alleged "highly personal violations" that support an independent tort claim.  For example, in

13   Sommatino, the Court of Appeals noted that its prior decisions had permitted separate tort claims

14   to proceed where the allegations concerned, among other things, rape by a supervisor, harassment

15   and stalking by a supervisor to the point of causing an employee to miscarry a child, and forcible

16   fondling and unwanted sexual advances facilitated by false imprisonment.  See Sommatino, 255

17   F.3d at 711-12 (discussing the holdings of Brock v. United States, 64 F.3d 1421 (9th Cir. 1995);

18

19       [16] It is unclear from the First Amended Complaint whether plaintiff even intended to assert
     an independent state law claim of negligence.  Plaintiff's claim is entitled "Gross-Negligence
20   Violation of the 14th Amendment In Civil Rights And ADA," and alleges: "The Plaintiff believes
     that an identity [sic] that does not offer 'disability points' on the exam is grossly negligent (tort),
21   where it resulted in scoring lower to [sic] other competitive candidates and is in violation of
     American Disability Act [sic] and Civil Rights Act and is not treated as an equal on the examination
22   unlawfully."  (First Am. Compl. at 4.)  Nevertheless, because plaintiff actually uses the word "tort,"
     the undersigned separately addresses plaintiff's negligence claim as if plaintiff intended it as an
23   independent state law tort claim.

24       [17] See, e.g., Ford v. United States, No. C 11-00498 SI, 2011 WL 2036456, at *1 (N.D. Cal.
     May 24, 2011) (unpublished) (dismissing the plaintiff's claims for negligence, intentional infliction
25   of emotional distress, violation of the California Constitution, and California Civil Code § 52.1 to
     the extent that such claims were based on the racial, age, and religious workplace discrimination
26   allegedly suffered, but permitting the plaintiff to amend his complaint to allege claims pursuant to
     Title VII and the Age Discrimination in Employment Act of 1967).

1   Otto v. Heckler, 781 F.2d 754 (9th Cir. 1986); and Arnold v. United States, 816 F.2d 1306 (9th

2   Cir. 1987)); but see id. at 711-12 (holding that intentional touching and sexually suggestive and

3   vulgar remarks did *not* constitute "a highly personal violation" beyond workplace

4   discrimination).  Plaintiff's allegations greatly pale in comparison to allegations found to support

5   a tort claim independent of any Title VII claim.  Accordingly, plaintiff's claim of "gross

6   negligence" should be dismissed with prejudice.

7         C.    Title VII and Rehabilitation Act Claims Alleged Against Defendant Steinberg

8        As a result of the foregoing analysis, plaintiff's remaining claims against

9   defendants are those alleged pursuant to Title VII and the Rehabilitation Act.  Defendants argue

10  that plaintiff's Title VII and Rehabilitation Act claims are subject to dismissal with prejudice as

11  to defendant James Steinberg because he is not a proper defendant insofar as Title VII and

12  Rehabilitation Act claims are concerned.  Defendants' argument is well-taken.

13       Coverage of Title VII of the Civil Rights Act of 1964 is extended to reach

14  applicants for federal employment through 42 U.S.C. § 2000e-16, which provides that "all

15  personnel actions affecting federal employees and applicants for federal employment shall be

16  made free from any discrimination based on race, color, religion, sex, or national origin."

17  Brown, 425 U.S. at 829-30 (citation and quotation marks omitted).  "Title VII requires that in a

18  civil action alleging employment discrimination by the government, 'the head of the department,

19  agency, or unit, as appropriate, shall be the defendant.'"  Vinieratos v. U.S., Dep't of Air Force,

20  939 F.2d 762, 772 (9th Cir. 1991) (quoting 42 U.S.C. § 2000e-16(c); accord White, 652 F.2d at

21  916 n.4.  This requirement of Title VII also applies to claims alleged pursuant to the

22  Rehabilitation Act.  See 29 U.S.C. § 794a(a)(1) (making the remedies, procedures and rights set

23  forth in 42 U.S.C. § 2000e-16 available in claims asserting violations of 29 U.S.C. § 791); Lopez

24  v. Johnson, 333 F.3d 959, 961 (9th Cir. 2003) (per curiam) ("For complaints filed under section

25  501, the [Rehabilitation Act] borrows 'the remedies, procedures, and rights' from Title VII of the

26  Civil Rights Act of 1964.") (citing 29 U.S.C. § 794a(a)(1)); Mahoney v. U.S. Postal Serv., 884

F.2d 1194, 1196 & n.1 (9th Cir. 1989) (stating that "the Rehabilitation Act simply makes available to victims of handicap discrimination the rights and remedies embodied in Title VII," and holding that the head of the United States Postal Service was the only appropriately named defendant).[18]

Here, the Secretary of the U.S. Department of State, Secretary Clinton, is the proper defendant with respect to plaintiff's Title VII and Rehabilitation Act claims. Plaintiff appropriately named Secretary Clinton as a defendant, but also named Deputy Secretary of State James Steinberg as a defendant. Deputy Secretary Steinberg is not the head of the Department of State and is thus not a proper defendant *in this action. Accordingly, plaintiff's Title VII and Rehabilitation Act claims should be dismissed with prejudice as to Deputy Secretary Steinberg.

IV.   MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff's remaining claims are his disability discrimination claim premised on the Rehabilitation Act, and his claims of race, religion, and national origin discrimination claims premised on Title VII. The undersigned addresses the Rehabilitation Act and Title VII in turn, and concludes that Secretary Clinton is entitled to summary judgment in regards to plaintiff's Rehabilitation Act and Title VII claims.[19]

A.   Plaintiff's Rehabilitation Act Claim, 29 U.S.C. § 791

Defendants initially move for summary judgment as to plaintiff's Rehabilitation

---

[18] Unpublished decisions of district courts within the Ninth Circuit are in accord. See also e.g., Munoz, 2011 WL 1085644, at *4 ("Under the Rehabilitation Act, the head of the department, agency, or unit is the only proper defendant.") (citations quotation marks omitted); Kunamneni v. Gutierrez, No. C 08-5154 PJH, 2009 WL 909831, at *2 (N.D. Cal. Apr. 2, 2009) (unpublished) (same); Ka"Anoi v. Dail, No. CIV S-07-2722 JKS EFB PS, 2008 WL 2788419, at * 4 (E.D. Cal. July 18, 2008) (unpublished) (same); Easterly v. Dep't of Army, No. CIV S-07-1259 JAM DAD PS, 2008 WL 2054798, at *7 (E.D. Cal. May 9, 2008) (unpublished) (same).

[19] The undersigned recommended above that plaintiff's Rehabilitation Act and Title VII claims be dismissed as to Deputy Secretary Steinberg because he is not a proper defendant as to such claims. To the extent that the district judge assigned to this matter disagrees with that earlier conclusion, the  undersigned's analysis of plaintiff's Rehabilitation Act and Title VII vis-a-vis Secretary Clinton would also apply to Deputy Secretary Steinberg.

1   Act claim on the grounds that plaintiff cannot substantiate a prima facie claim of disability

2   discrimination.  Because the undersigned agrees that Secretary Clinton is entitled to summary

3   judgment on the grounds that plaintiff has not created a genuine dispute of material fact as to his

4   prima facie claim, the undersigned does not address defendants' remaining arguments here.

5           "Section 501 of the [Rehabilitation Act] announces a federal government policy to

6   prevent discrimination against the disabled in employment decisions, and expressly encourages

7   federal government employers to employ individuals with disabilities."  Lopez, 333 F.3d at 961.

8   To state a prima facie claim of disability discrimination under the Rehabilitation Act, "a plaintiff

9   must demonstrate that (1) [he or] she is a person with a disability, (2) who is otherwise qualified

10  for employment, and (3) suffered discrimination because of [his or] her disability."  Walton v.

11  U.S. Marshals Serv., 492 F.3d 998, 1005 (9th Cir. 2007).  "Section 501 [of the Rehabilitation

12  Act] borrows its substantive standards from the Americans with Disabilities Act (ADA)."

13  Lopez, 333 F.3d at 961 (citing 29 U.S.C. § 791(g)).  If the plaintiff makes a prima facie showing,

14  "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the

15  employment decision.  The burden then shifts back to the plaintiff to produce evidence sufficient

16  to allow a reasonable factfinder to conclude that plaintiff's articulated reason is pretextual."

17  Wilborn, 222 F. Supp. 2d at 1207.

18          Defendants do not, in essence, dispute that plaintiff is a person with a disability.

19  In regards to the first element of plaintiff's prima facie case, defendants state that they "do not

20  dispute the disabled status of the plaintiff under the Rehabilitation Act at this time, but reserve

21  the right to do so if plaintiff's disability discrimination claim survives this motion."  (Defs.'

22  Memo. at 10.)  Accordingly, for the purpose of defendants' motion for partial summary

23  judgment, the undersigned assumes that plaintiff is a person with a disability.

24          To satisfy the second element of a prima facie Rehabilitation Act claim, plaintiff

25  must demonstrate that he was "otherwise qualified for employment" with the State Department

26  as a Foreign Affairs Officer.  The Ninth Circuit Court of Appeals has described the question of a

1   plaintiff's qualification for employment as proceeding through a two-step inquiry:

2               Qualification for a position is a two-step inquiry.  The court first examines
              whether the individual satisfies the "requisite skill, experience, education
3               and other job-related requirements" of the position.  The court then
              considers whether the individual "can perform the essential functions of
4               such position" with or without a reasonable accommodation.

5   Bates v. United Parcel Serv., 511 F.3d 974, 990 (9th Cir. 2009) (en banc) (citing 29 C.F.R.

6   § 1630.2(m), and 42 U.S.C. § 12111(8)).[20]  The plaintiff bears the ultimate burden to prove that

7   he is "qualified."  See id.

8               Regarding the issue of plaintiff's qualification for employment, defendants

9   contend that plaintiff failed to show that he was qualified for the Foreign Affairs Officer position

10  because he has not produced evidence verifying that he met the educational requirements for the

11  position. (Defs.' Memo. at 10-11.)  Specifically, defendants argue that plaintiff failed to meet an

12  express requirement of the application process by not submitting his undergraduate college

13  transcripts as verification of his education in support of his application.

14              One of the "Basic Requirements" for the Foreign Affairs Officer position was that

15  the applicant possess a bachelor's degree or graduate degree in—or fulfill a minimum number of

16  credit hours in—the subject areas of international law, international relations, political science,

17  economics, history, sociology, geography, social or cultural anthropology, law, statistics, or the

18  humanities. (See Mason Decl. ¶ 8 & Ex. 1 at 3-4.)  Additionally, the vacancy announcement

19  stated in bolded typeface: "All applicants MUST submit transcripts as verification of educational

20  requirement by the closing date of this announcement.  If you fail to provide requested

21  _____

22      [20]  In relevant part, the ADA's implementing regulations defines the term "qualified" as
    follows: "The term 'qualified,' with respect to an individual with a disability, means that the
23  individual satisfies the requisite skill, experience, education and other job-related requirements of
    the employment position such individual holds or desires and, with or without reasonable
24  accommodation, can perform the essential functions of such position."  29 C.F.R. § 1630.2(m).
    Although the decision in Bates concerned a claim for relief brought pursuant to the ADA,  the ADA
25  standards applied in Bates apply to plaintiff's claim brought pursuant to Section 501 of the
    Rehabilitation Act because, as noted above, Section 501 of the Rehabilitation Act incorporates and
26  applies the substantive employment-related standards of the ADA.  See 29 U.S.C. § 791(g); Lopez,
    333 F.3d at 961.

1 information, or the information you submit is insufficient to verify your eligibility, you WILL

2 lose consideration for this position."  (Mason Decl. ¶ 8 & Ex. 1 at 4 (emphasis omitted).)

3          The declaration of Janice M. Mason, a Human Resources Specialist with the State

4 Department who designed the job announcement and reviewed the submitted applications, states

5 that plaintiff represented in his application that he met the educational requirement and submitted

6 a resume stating that plaintiff possessed a bachelor's degree in Government, but that plaintiff did

7 not submit his college transcripts as supporting or verifying documentation.  (See Mason Decl.

8 ¶¶ 1, 3-4, 8 & Ex. 5.)[21]  Accordingly, Ms. Mason declares that plaintiff "did not meet the basic

9 qualifications for the position."  (Id. ¶ 8.)

10          On the record before the court, plaintiff has not met his burden with respect to the

11 first step of the "qualification" analysis as stated in Bates.  Other than the resume submitted by

12 and pointed to by defendants, plaintiff has not offered any evidence confirming that he met the

13 educational or degree requirement for the position of Foreign Affairs Officer.  Plaintiff has

14 submitted no evidence demonstrating that he ever submitted his college transcripts as verification

15 of his degree or completion of the required credit hours in the appropriate subjects of study.  The

16 submission of such transcripts was an express, basic requirement for the position sought; indeed,

17 the application plainly stated that the failure to submit such transcripts would result in a loss of

18 consideration for the position.  In his opposition brief and at the hearing, plaintiff contended in

19 conclusory fashion that he submitted his transcripts.  (See, e.g., Opp'n at 12.)  But, again,

20 plaintiff failed to cite to evidence in the record substantiating his educational qualification or that

21 he ever submitted the requisite verification of his education to the State Department.  Plaintiff

22 failed to meet his burden despite being expressly warned by defendants, in advance of the

23 deadline for his written opposition to the motion for partial summary judgment, of the

24

25 _____
[21]   Exhibit 5 to Ms. Mason's declaration is a July 22, 2011 printout from the State Department's hiring management system, which reflects what documents were submitted by plaintiff in connection with his application.  In the field entitled "Transcripts," the printout states: "No

26 document Submitted."  (Mason Decl., Ex. 5.)

23

1    evidentiary requirements for opposing a summary judgment motion.  Accordingly, the

2    undersigned concludes that plaintiff failed to create a triable issue as to step two of his prima

3    facie Rehabilitation Act claim.  As a result, Secretary Clinton is entitled to summary judgment in

4    regards to plaintiff's Rehabilitation Act claim.

5           B.    Plaintiff's Title VII Claim, 42 U.S.C. § 2000e-16

6                  Defendants also move for summary judgment as to plaintiff's Title VII claim on

7    the grounds that plaintiff has not created a genuine dispute of fact as to plaintiff's prima facie

8    claims of discrimination.  Plaintiff's Title VII claim is premised on the fact that he was "forced"

9    to provide his former name—Rasoul Rahimi—on the application for the Foreign Affairs Officer

10   applications, and that this was the basis of race, ethnicity, and religious discrimination on the part

11   of the State Department.  See 42 U.S.C. § 2000e-16(a) (prohibiting discrimination on the basis of

12   race, color, religion, sex, or nation origin in regards to personnel actions affecting federal

13   employees or applicants for federal employment).

14                 At the outset, the undersigned notes that plaintiff has not pointed to any evidence

15   suggesting that he was forced to provide his former name to the State Department when applying

16   for a job.  Instead, it appears that plaintiff voluntarily provided that name on his resume, which

17   he submitted in connection with his application.  (See Mason Decl., Ex. 4 at 14.)  In any event,

18   the determination of whether plaintiff was actually forced to provide his former name is not

19   material to resolution of the pending motion.

20                 In opposing a motion for summary judgment as to a Title VII discrimination claim

21   premised on disparate treatment, "a plaintiff may produce direct or circumstantial evidence

22   demonstrating that a discriminatory reason more likely than not motivated the defendant's

23   decision, or alternatively may establish a prima facie case under the burden-shifting framework

24   set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 . . . (1973)."  Dominguez-Curry v.

25   Nev. Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005).  To state a prima facie discrimination

26   claim under the McDonnell Douglas framework, "a plaintiff must show that (1) [he] belongs to a

24

1  protected class; (2) [he] applied for and was qualified for the position [he] was denied; (3) [he]

2  was rejected despite [his] qualifications; and (4) the employer filled the position with an

3  employee not of plaintiff's class, or continued to consider other applicants whose qualifications

4  were comparable to plaintiff's after rejecting plaintiff." Dominguez-Curry, 424 F.3d at 1037.  If

5  the plaintiff establishes a prima facie case, it creates a rebuttable presumption that the employer

6  unlawfully discriminated against the plaintiff, and the "burden of production then shifts to the

7  employer to articulate a legitimate, nondiscriminatory reason for its action." Id. If the employer

8  meets this burden, the "plaintiff then must produce sufficient evidence to raise a genuine issue of

9  material fact as to whether the employer's proffered nondiscriminatory reason is merely a pretext

10  for discrimination." Id. Under the McDonnell Douglas framework, "[t]he burden of persuasion,

11  as opposed to production, however, remains with the plaintiff at all times." Bodett v. CoxCom,

12  Inc., 366 F.3d 736, 743 (9th Cir. 2004).

13          Here, plaintiff's Title VII claim fails for the same reason that his Rehabilitation

14  Act claim fails; plaintiff has not created a genuine dispute of material fact regarding his prima

15  facie case of discrimination.  Assuming that plaintiff belongs to a protected class, which appears

16  undisputed, plaintiff has not met his burden to create a triable dispute as to whether he was

17  qualified for the position that he was denied.  As with plaintiff's Rehabilitation Act claim,

18  plaintiff did not verify or substantiate the educational requirements attendant to the position he

19  sought and, accordingly, was not qualified.  Accordingly, the undersigned recommends that

20  Secretary Clinton be granted summary judgment as to plaintiff's Title VII discrimination claim.

21  As a result, the undersigned does not reach defendants' alternative arguments.

22  V.    CONCLUSION

23          For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

24          1.    Defendants' motion to dismiss and alterative motion for summary

25  judgment (Dkt. No. 59) be granted.

26          2.    Plaintiff's claims brought pursuant to the Americans with Disabilities Act,

25

1  42 U.S.C. §§ 1983 and 1985, "Article III," and his <u>Bivens</u> claims and negligence claim be

2  dismissed with prejudice as to both defendants.

3        3.    Plaintiff's Title VII and Rehabilitation Act claims be dismissed with

4  prejudice as to defendant James Steinberg.

5        4.    Defendant Hillary Clinton be granted summary judgment as to plaintiff's

6  Title VII and Rehabilitation Act claims.

7        5.    Judgment be entered in defendants' favor, and the Clerk of Court be

8  directed to close this case.

9        These findings and recommendations are submitted to the United States District

10  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen

11  days after being served with these findings and recommendations, any party may file written

12  objections with the court and serve a copy on all parties. <u>Id.</u>; <u>see also</u> E. Dist. Local Rule 304(b).

13  Such a document should be captioned "Objections to Magistrate Judge's Findings and

14  Recommendations." Any response to the objections shall be filed with the court and served on

15  all parties within fourteen days after service of the objections. E. Dist. Local Rule 304(d).

16  Failure to file objections within the specified time may waive the right to appeal the District

17  Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d

18  1153, 1156-57 (9th Cir. 1991).

19        IT IS SO RECOMMENDED.

20  DATED: October 19, 2011

21

22  KENDALL J. NEWMAN

23  UNITED STATES MAGISTRATE JUDGE

24

25

26